# EXHIBIT 2

# Allegheny County - Department of Court Records
## Civil/Family Division Docket Report

**GD-15-016212**                    **United States Steel Corp. vs Universal Metals LLC**

**Run Date:** 10/21/2015
**Run Time:** 02:07:00 PM

| | | |
|---|---|---|
| *Court Type:* | **General Docket** | |
| *Case Type:* | **Contract - Debt Collection** | *Related Cases:* |
| *Judge:* | **No Judge** | *Jury Requested:* **No** |
| *Current Status:* | **Complaint** | *Amount In Dispute:* **$ 2193930.62** |

## Parties

### – Litigants –

| ID | LName | FName | MI | Type | Address | Phone | Attorney |
|---|---|---|---|---|---|---|---|
| @1575380 | United States Steel Corporation | — | — | Plaintiff | 15th Floor, Legal Department 600 Grant Street Pittsburgh PA 15219 | — | Reynolds Jr. Samuel F, |
| @2169306 | Feniger | David | E. | Defendant | 805 Chicago Street Toledo OH 43611 | — | — |
| @2169305 | Universal Metals LLC | — | — | Defendant | 805 Chicago Street Toledo OH 43611 | — | — |

### – Attorney –

| ID | LName | FName | MI | Type | Address | Phone |
|---|---|---|---|---|---|---|
| 42215 | Reynolds Jr. | Samuel | F | Plaintiff's Attorney | 600 Grant St. Room 1500 Pittsburgh PA 15219 | (412)4332832 |
| PROSE | Pro Se | — | — | Attorney | No Default Address Available | -- |

### – Non Litigants –

#### No Listing

## Docket Entries

| Filing Date | Docket Type | Docket Text | Filing Party |
|---|---|---|---|
| 09/16/2015 | Complaint | | United States Steel Corporation |

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

UNITED STATES STEEL
CORPORATION,

                Plaintiff,

       v.

UNIVERSAL METALS, LLC and
DAVID E. FENIGER,

              Defendants.

CIVIL DIVISION

NO. GD 15-

Code 010

**COMPLAINT**

Filed on behalf of:

UNITED STATES STEEL CORPORATION

Counsel for this party:

SAMUEL F. REYNOLDS, JR., ESQUIRE
PA I.D. # 42215
sfreynoldsjr@uss.com
(412) 433-2832

UNITED STATES STEEL CORPORATION
600 Grant Street, Room 1500
Pittsburgh, PA 15219-4776

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

UNITED STATES STEEL
CORPORATION,

              Plaintiff,

       v.

UNIVERSAL METALS, LLC and
DAVID E. FENIGER,

              Defendants.

CIVIL DIVISION

NO. GD 15-

## NOTICE TO DEFEND

To:    Universal Metals, LLC, 805 Chicago Street, Toledo, OH 43611

          and

          David E. Feniger, c/o Universal Metals, LLC, 805 Chicago Street, Toledo, OH 43611

        YOU HAVE BEEN SUED IN COURT. If you wish to defend against the claims set forth in the following pages, you must take action within TWENTY (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

        YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

        IF YOU CANNOT AFFORD A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Lawyer Referral Service
Allegheny County Bar Association
11th Floor Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219
Telephone: (412) 261-5555

                                */s/ Samuel F. Reynolds, Jr.*
                                SAMUEL F. REYNOLDS, JR., ESQUIRE

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

UNITED STATES STEEL         CIVIL DIVISION
CORPORATION,

                               NO.  GD 15-

          Plaintiff,

      v.

UNIVERSAL METALS, LLC and
DAVID E. FENIGER,

         Defendants.

## COMPLAINT

NOW COMES United States Steel Corporation, through undersigned counsel, and for its

Complaint against Universal Metals, LLC and David E. Feniger, avers:

1.       Plaintiff, United States Steel Corporation ("U. S. Steel"), is a Delaware

corporation with its principal place of business in Pittsburgh, Allegheny County, Pennsylvania.

2.       Defendant, Universal Metals, LLC ("Universal Metals"), is an Ohio limited

liability company with its principal place of business at 805 Chicago Street, Toledo, Ohio.

3.       Defendant, David E. Feniger ("Feniger"), is an individual of the full age of

majority and a manager, member and/or officer of Universal Metals.

### COUNT I
*United States Steel Corporation v. Universal Metals, LLC*

4.       On 250 occasions on and between September 25, 2014 and January 29, 2015, at

Universal Metals' request, U. S. Steel sold non-prime steel to Universal Metals, in the

transactions identified and for the prices set forth in the Statement of Account which is attached

hereto as Exhibit "A."

5.       For each of the aforesaid orders placed by Universal Metals, U. S. Steel issued to

Universal Metals an order acknowledgment that contained the terms and conditions set forth in

the form attached hereto as Exhibit "B."

6.    Among the terms and conditions in the order acknowledgments that U. S. Steel issued to Universal Metals was a provision that U. S. Steel sold the non-prime steel to Universal Metals "as is" and without any warranty whatsoever.

7.    For each of the orders that Universal Metals placed, U. S. Steel issued an invoice that described the order and recited the invoice date, shipment date, quantity, price and payment terms, among other things.

8.    Despite having supplied the non-prime steel to Universal Metals and despite amicable demand, Universal Metals has failed and refused to pay to U. S. Steel the amount due and owing in the principal sum of TWO MILLION ONE HUNDRED NINETY-THREE THOUSAND NINE HUNDRED THIRTY AND 62/100 ($2,193,930.62) DOLLARS.

9.    Pursuant to the aforesaid terms and conditions, U. S. Steel is also entitled to recover interest from Universal Metals on each unpaid invoice, at the maximum rate permitted by law or the Prime Rate in effect by JPMorgan Chase Bank, N.A. on the first day of the month when each invoiced amount first become past due, plus 3.5%, whichever is less, and all reasonable costs and expenses incurred by U. S. Steel in bringing this action, including reasonable attorney's fees and expenses.

WHEREFORE, plaintiff, United States Steel Corporation, requests judgment in its favor and against defendant, Universal Metals, LLC, in the amount of the principal debt, interest, attorney's fees, expenses and costs, and for such other relief as the Court deems appropriate.

## COUNT II
*United States Steel Corporation v. David E. Feniger*

10.    Paragraphs 1 through 9 of this Complaint are incorporated by reference as if set forth here at length.

11.   In a Personal Guaranty Agreement dated December 31, 2013, defendant, David E. Feniger, unconditionally guaranteed payment of any and all of Universal Metals' indebtedness to U. S. Steel. A true copy of the Personal Guaranty Agreement is attached as Exhibit "C."

12.   In a separate Personal Guaranty Agreement dated February 4, 2015, defendant, David E. Feniger, unconditionally guaranteed payment of any and all of Universal Metals' indebtedness to U. S. Steel. A true copy of the Personal Guaranty Agreement is attached as Exhibit "D."

13.   Universal Metals is indebted to U. S. Steel for the principal sum of TWO MILLION ONE HUNDRED NINETY-THREE THOUSAND NINE HUNDRED THIRTY AND 62/100 ($2,193,930.62) DOLLARS, plus contractual interest and all court costs and reasonable legal fees and expenses incurred by U. S. Steel in bringing this action.

14.   Defendant, David E. Feniger, is liable to U. S. Steel on the guaranties for the principal sum of TWO MILLION ONE HUNDRED NINETY-THREE THOUSAND NINE HUNDRED THIRTY AND 62/100 ($2,193,930.62) DOLLARS, plus contractual interest and all court costs and reasonable legal fees and expenses incurred by U. S. Steel in bringing this action.

WHEREFORE, plaintiff, United States Steel Corporation, requests judgment in its favor and against defendant, David E. Feniger, in the amount of the principal debt, interest, attorney's fees, expenses and costs, and for such other relief as the Court deems appropriate.

*/s/ Samuel F. Reynolds, Jr.*
SAMUEL F. REYNOLDS, JR., ESQUIRE
PA I.D. #42215
sfreynoldsjr@uss.com
UNITED STATES STEEL CORPORATION
U. S. Steel Tower, Room 1500
600 Grant Street
Pittsburgh, PA 15219-4776
(412) 433-2832

3

## VERIFICATION

The undersigned hereby states and affirms that he is Assistant Treasurer - Credit & Banking of United States Steel Corporation; that he is duly authorized to execute this Verification on behalf of the Corporation; that he is knowledgeable of those matters, which are the subject of the foregoing Complaint; and that the averments of the Complaint are true and accurate to the best of his knowledge, information and belief.  He makes this verification subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Date: ___9/14/15___                              _____

                                                              Gregg P. Schmidt

| Organization | Transaction | Date | Shipment Date | Due Date | Purchase Order | Sales Order | Original Amount |
|---|---|---|---|---|---|---|---|
| USS USA Operating Unit | 546-886882 | 1-Oct-14 | 25-Sep-14 | 31-Oct-14 | DUAL PHASE -NARROW | EQ90750 | $12,042.38 |
| USS USA Operating Unit | 541-035886 | 1-Oct-14 | 29-Sep-14 | 31-Oct-14 | 16405-14 | EQ91131 | $11,136.08 |
| USS USA Operating Unit | 488-109111 | 1-Oct-14 | 29-Sep-14 | 31-Oct-14 | 19332  19338 | EC90660 | $11,945.13 |
| USS USA Operating Unit | 161-597200 | 1-Oct-14 | 17-Sep-14 | 31-Oct-14 | 16201-SW CR | EQ91303 | $11,624.04 |
| USS USA Operating Unit | 419-578417 | 1-Oct-14 | 1-Oct-14 | 31-Oct-14 | 16201 | ET90329 | $11,347.63 |
| USS USA Operating Unit | 146-145359 | 1-Oct-14 | 1-Oct-14 | 31-Oct-14 | 18289 | EN91008 | $11,309.89 |
| USS USA Operating Unit | 145-145605 | 3-Oct-14 | 3-Oct-14 | 2-Nov-14 | 16925 | EN90803 | $16,485.08 |
| USS USA Operating Unit | 419-579162 | 3-Oct-14 | 3-Oct-14 | 2-Nov-14 | 16201 | ET90624 | $16,577.13 |
| USS USA Operating Unit | 146-145548 | 3-Oct-14 | 3-Oct-14 | 2-Nov-14 | 18289 | EN91008 | $12,322.65 |
| USS USA Operating Unit | 146-145726 | 6-Oct-14 | 6-Oct-14 | 5-Nov-14 | 18289 | EN91008 | $13,723.86 |
| USS USA Operating Unit | 146-145878 | 8-Oct-14 | 8-Oct-14 | 7-Nov-14 | 18289 | EN91008 | $12,684.26 |
| USS USA Operating Unit | 546-050589 | 9-Oct-14 | 9-Oct-14 | 8-Nov-14 | 16829 | EQ90748 | $2,203.20 |
| USS USA Operating Unit | 546-050590 | 9-Oct-14 | 9-Oct-14 | 8-Nov-14 | 16201-CR | EQ91384 | $5,376.25 |
| USS USA Operating Unit | 146-145966 | 9-Oct-14 | 9-Oct-14 | 8-Nov-14 | 18289 | EN91008 | $11,319.78 |
| USS USA Operating Unit | 416-580545 | 9-Oct-14 | 9-Oct-14 | 8-Nov-14 | 16405-14 | ET90334 | $11,993.55 |
| USS USA Operating Unit | 416-580546 | 9-Oct-14 | 9-Oct-14 | 8-Nov-14 | 16405-GALV SW | ET90433 | $7,437.00 |
| USS USA Operating Unit | 161-604306 | 9-Oct-14 | 9-Oct-14 | 8-Nov-14 | 16201-SW CR | EQ91303 | $5,810.00 |
| USS USA Operating Unit | 416-580540 | 9-Oct-14 | 9-Oct-14 | 8-Nov-14 | 16405-GANN SW | ET90425 | $17,076.50 |
| USS USA Operating Unit | 416-580541 | 9-Oct-14 | 9-Oct-14 | 8-Nov-14 | 16405-GALV SW | ET90433 | $9,407.25 |
| USS USA Operating Unit | 416-580702 | 10-Oct-14 | 10-Oct-14 | 9-Nov-14 | 16405-14 | ET90334 | $13,059.15 |
| USS USA Operating Unit | 416-580703 | 10-Oct-14 | 10-Oct-14 | 9-Nov-14 | 16405-GANN SW | ET90425 | $9,356.55 |
| USS USA Operating Unit | 416-580757 | 10-Oct-14 | 10-Oct-14 | 9-Nov-14 | 16405-14 | ET90334 | $23,229.53 |
| USS USA Operating Unit | 146-146137 | 13-Oct-14 | 13-Oct-14 | 12-Nov-14 | 18289 | EN91008 | $10,749.13 |
| USS USA Operating Unit | 146-146158 | 13-Oct-14 | 13-Oct-14 | 12-Nov-14 | 18289 | EN91010 | $11,641.13 |
| USS USA Operating Unit | 146-146064 | 13-Oct-14 | 13-Oct-14 | 12-Nov-14 | 16201 | EQ91350 | $16,661.10 |
| USS USA Operating Unit | 170-141315 | 13-Oct-14 | 13-Oct-14 | 12-Nov-14 | 16201 | EQ90801 | $2,798.40 |
| USS USA Operating Unit | 416-581088 | 13-Oct-14 | 13-Oct-14 | 12-Nov-14 | 16405-GALV SW | ET90433 | $10,278.60 |
| USS USA Operating Unit | 416-581091 | 13-Oct-14 | 13-Oct-14 | 12-Nov-14 | 16405-GALV SW | ET90433 | $9,679.20 |
| USS USA Operating Unit | 146-146230 | 14-Oct-14 | 14-Oct-14 | 13-Nov-14 | 18289 | EN91008 | $6,754.58 |
| USS USA Operating Unit | 146-146229 | 14-Oct-14 | 14-Oct-14 | 13-Nov-14 | 18289 | EN91010 | $2,983.13 |
| USS USA Operating Unit | 416-581364 | 14-Oct-14 | 14-Oct-14 | 13-Nov-14 | 16405-14 | ET90334 | $19,577.63 |
| USS USA Operating Unit | 419-581830 | 15-Oct-14 | 15-Oct-14 | 14-Nov-14 | 16201 | ET90329 | $25,507.00 |
| USS USA Operating Unit | 419-581831 | 15-Oct-14 | 15-Oct-14 | 14-Nov-14 | 16201 | ET90329 | $25,834.75 |
| USS USA Operating Unit | 419-581886 | 15-Oct-14 | 15-Oct-14 | 14-Nov-14 | 16201 | ET90329 | $7,886.13 |
| USS USA Operating Unit | 419-581887 | 15-Oct-14 | 15-Oct-14 | 14-Nov-14 | 16201  DP | ET90481 | $11,662.20 |
| USS USA Operating Unit | 416-582368 | 16-Oct-14 | 16-Oct-14 | 15-Nov-14 | 16405-GALV | ET90426 | $7,343.10 |
| USS USA Operating Unit | 416-582369 | 16-Oct-14 | 16-Oct-14 | 15-Nov-14 | 16405-N | ET90627 | $5,176.34 |
| USS USA Operating Unit | 416-582092 | 16-Oct-14 | 16-Oct-14 | 15-Nov-14 | 16405-GALV SW | ET90433 | $16,158.83 |
| USS USA Operating Unit | 419-582058 | 16-Oct-14 | 16-Oct-14 | 15-Nov-14 | 16201  DP | ET90481 | $15,482.18 |
| USS USA Operating Unit | 419-582075 | 16-Oct-14 | 16-Oct-14 | 15-Nov-14 | 16201  DP | ET90481 | $14,575.43 |
| USS USA Operating Unit | 419-582076 | 16-Oct-14 | 16-Oct-14 | 15-Nov-14 | 16201  DP | ET90481 | $15,310.13 |
| USS USA Operating Unit | 419-582084 | 16-Oct-14 | 16-Oct-14 | 15-Nov-14 | 16201 | ET90329 | $25,331.63 |
| USS USA Operating Unit | 419-582143 | 16-Oct-14 | 16-Oct-14 | 15-Nov-14 | 16201 | ET90329 | $11,002.63 |
| USS USA Operating Unit | 419-582144 | 16-Oct-14 | 16-Oct-14 | 15-Nov-14 | 16201  DP | ET90481 | $9,251.18 |
| USS USA Operating Unit | 146-146556 | 17-Oct-14 | 17-Oct-14 | 16-Nov-14 | 18289 | EN91008 | $7,393.03 |
| USS USA Operating Unit | 146-146555 | 17-Oct-14 | 17-Oct-14 | 16-Nov-14 | 18289 | EN91010 | $4,675.88 |
| USS USA Operating Unit | 419-582345 | 17-Oct-14 | 17-Oct-14 | 16-Nov-14 | 16201  DP | ET90481 | $13,659.38 |
| USS USA Operating Unit | 541-036824 | 17-Oct-14 | 17-Oct-14 | 16-Nov-14 | 16405-GANN SW | EQ91130 | $4,318.37 |
| USS USA Operating Unit | 541-036825 | 17-Oct-14 | 17-Oct-14 | 16-Nov-14 | 16405-14 | EQ91131 | $6,111.66 |
| USS USA Operating Unit | 416-582715 | 20-Oct-14 | 20-Oct-14 | 19-Nov-14 | 16405-GALV SW | ET90433 | $18,412.13 |
| USS USA Operating Unit | 416-582944 | 21-Oct-14 | 21-Oct-14 | 20-Nov-14 | 16405-GALV SW | ET90433 | $9,612.60 |
| USS USA Operating Unit | 416-583034 | 21-Oct-14 | 21-Oct-14 | 20-Nov-14 | 16405-GALV SW | ET90433 | $16,067.25 |
| USS USA Operating Unit | 416-583035 | 21-Oct-14 | 21-Oct-14 | 20-Nov-14 | 16405-GALV SW | ET90433 | $7,867.13 |
| USS USA Operating Unit | 419-583022 | 21-Oct-14 | 21-Oct-14 | 20-Nov-14 | 16201 | ET90329 | $12,601.13 |
| USS USA Operating Unit | 419-583023 | 21-Oct-14 | 21-Oct-14 | 20-Nov-14 | 16201  DP | ET90481 | $10,664.78 |
| USS USA Operating Unit | 419-583169 | 21-Oct-14 | 21-Oct-14 | 20-Nov-14 | 16201 | ET90329 | $23,713.00 |
| USS USA Operating Unit | 416-583453 | 22-Oct-14 | 22-Oct-14 | 21-Nov-14 | 16405-GALV | ET90426 | $16,048.43 |
| USS USA Operating Unit | 416-583663 | 22-Oct-14 | 22-Oct-14 | 21-Nov-14 | 16405-GALV | ET90426 | $8,794.50 |
| USS USA Operating Unit | 419-583307 | 22-Oct-14 | 22-Oct-14 | 21-Nov-14 | 16201  DP | ET90481 | $13,998.83 |
| USS USA Operating Unit | 170-145181 | 23-Oct-14 | 23-Oct-14 | 22-Nov-14 | 16923 | EN90779 | $11,023.88 |
| USS USA Operating Unit | 170-145180 | 23-Oct-14 | 23-Oct-14 | 22-Nov-14 | 16923 | EN90778 | $2,097.90 |
| USS USA Operating Unit | 488-112992 | 24-Oct-14 | 24-Oct-14 | 23-Nov-14 | 19423  19424 | EN91190 | $5,222.16 |
| USS USA Operating Unit | 488-112993 | 24-Oct-14 | 24-Oct-14 | 23-Nov-14 | 19423  19424 | EN91190 | $5,229.36 |
| USS USA Operating Unit | 488-112998 | 24-Oct-14 | 24-Oct-14 | 23-Nov-14 | 19423  19424 | EN91190 | $5,254.56 |
| USS USA Operating Unit | 488-113009 | 24-Oct-14 | 24-Oct-14 | 23-Nov-14 | 19423  19424 | EN91190 | $9,440.28 |
| USS USA Operating Unit | 488-113011 | 24-Oct-14 | 24-Oct-14 | 23-Nov-14 | 19423  19424 | EN91190 | $9,846.22 |
| USS USA Operating Unit | 488-113012 | 24-Oct-14 | 24-Oct-14 | 23-Nov-14 | 19423  19424 | EN91190 | $5,414.76 |
| USS USA Operating Unit | 488-113013 | 24-Oct-14 | 24-Oct-14 | 23-Nov-14 | 19423  19424 | EN91190 | $5,423.76 |



EXHIBIT A

| | | | | | | |
|---|---|---|---|---|---|---|
| USS USA Operating Unit | 488-113014 | 24-Oct-14 | 24-Oct-14 | 23-Nov-14 | 19423  19424 | EN91190 | $5,206.20 |
| USS USA Operating Unit | 488-113015 | 24-Oct-14 | 24-Oct-14 | 23-Nov-14 | 19423  19424 | EN91190 | $5,199.00 |
| USS USA Operating Unit | 488-113017 | 24-Oct-14 | 24-Oct-14 | 23-Nov-14 | 19423  19424 | EN91190 | $5,251.20 |
| USS USA Operating Unit | 488-113018 | 24-Oct-14 | 24-Oct-14 | 23-Nov-14 | 19423  19424 | EN91190 | $5,217.00 |
| USS USA Operating Unit | 488-113019 | 24-Oct-14 | 24-Oct-14 | 23-Nov-14 | 19423  19424 | EN91190 | $4,857.00 |
| USS USA Operating Unit | 488-113021 | 24-Oct-14 | 24-Oct-14 | 23-Nov-14 | 19423  19424 | EN91190 | $5,231.40 |
| USS USA Operating Unit | 488-113022 | 24-Oct-14 | 24-Oct-14 | 23-Nov-14 | 19423  19424 | EN91190 | $5,233.20 |
| USS USA Operating Unit | 488-113035 | 24-Oct-14 | 24-Oct-14 | 23-Nov-14 | 19423  19424 | EN91190 | $5,195.40 |
| USS USA Operating Unit | 488-113036 | 24-Oct-14 | 24-Oct-14 | 23-Nov-14 | 19423  19424 | EN91190 | $5,235.00 |
| USS USA Operating Unit | 488-113037 | 24-Oct-14 | 24-Oct-14 | 23-Nov-14 | 19423  19424 | EN91190 | $5,195.40 |
| USS USA Operating Unit | 488-113038 | 24-Oct-14 | 24-Oct-14 | 23-Nov-14 | 19423  19424 | EN91190 | $5,193.60 |
| USS USA Operating Unit | 488-112990 | 24-Oct-14 | 24-Oct-14 | 23-Nov-14 | 19423  19424 | EN91190 | $5,190.00 |
| USS USA Operating Unit | 488-112990 | 24-Oct-14 | 24-Oct-14 | 23-Nov-14 | 19423  19424 | EN91190 | $5,207.76 |
| USS USA Operating Unit | 488-112991 | 24-Oct-14 | 24-Oct-14 | 23-Nov-14 | 19423  19424 | EN91190 | $5,213.16 |
| USS USA Operating Unit | 146-147120 | 27-Oct-14 | 27-Oct-14 | 26-Nov-14 | 18289 | EN91008 | $8,893.10 |
| USS USA Operating Unit | 146-147128 | 27-Oct-14 | 27-Oct-14 | 26-Nov-14 | 18289 | EN91008 | $8,531.50 |
| USS USA Operating Unit | 146-147119 | 27-Oct-14 | 27-Oct-14 | 26-Nov-14 | 18289 | EN91010 | $3,640.80 |
| USS USA Operating Unit | 488-113177 | 27-Oct-14 | 27-Oct-14 | 26-Nov-14 | 19423  19424 | EN91190 | $9,661.52 |
| USS USA Operating Unit | 488-113191 | 27-Oct-14 | 27-Oct-14 | 26-Nov-14 | 19423  19424 | EN91190 | $8,139.77 |
| USS USA Operating Unit | 488-113194 | 27-Oct-14 | 27-Oct-14 | 26-Nov-14 | 19423  19424 | EN91190 | $9,790.42 |
| USS USA Operating Unit | 488-113195 | 27-Oct-14 | 27-Oct-14 | 26-Nov-14 | 19423  19424 | EN91190 | $8,589.95 |
| USS USA Operating Unit | 488-113197 | 27-Oct-14 | 27-Oct-14 | 26-Nov-14 | 19423  19424 | EN91190 | $9,459.52 |
| USS USA Operating Unit | 488-113201 | 27-Oct-14 | 27-Oct-14 | 26-Nov-14 | 19423  19424 | EN91190 | $10,119.40 |
| USS USA Operating Unit | 488-113203 | 27-Oct-14 | 27-Oct-14 | 26-Nov-14 | 19423  19424 | EN91190 | $10,111.71 |
| USS USA Operating Unit | 488-113205 | 27-Oct-14 | 27-Oct-14 | 26-Nov-14 | 19423  19424 | EN91190 | $5,312.16 |
| USS USA Operating Unit | 161-616844 | 28-Oct-14 | 28-Oct-14 | 27-Nov-14 | 19693 | EC90777 | $10,859.20 |
| USS USA Operating Unit | 488-113539 | 29-Oct-14 | 29-Oct-14 | 28-Nov-14 | 19423  19424 | EN91190 | $5,226.56 |
| USS USA Operating Unit | 488-113540 | 29-Oct-14 | 29-Oct-14 | 28-Nov-14 | 19423  19424 | EN91190 | $5,263.56 |
| USS USA Operating Unit | 488-113541 | 29-Oct-14 | 29-Oct-14 | 28-Nov-14 | 19423  19424 | EN91190 | $10,159.80 |
| USS USA Operating Unit | 170-147009 | 29-Oct-14 | 29-Oct-14 | 28-Nov-14 | 16923 | EN90779 | $6,263.78 |
| USS USA Operating Unit | 170-147008 | 29-Oct-14 | 29-Oct-14 | 28-Nov-14 | 16923 | EN90778 | $4,814.63 |
| USS USA Operating Unit | 146-147358 | 30-Oct-14 | 30-Oct-14 | 29-Nov-14 | 16925 | EN90803 | $12,647.48 |
| USS USA Operating Unit | 146-147350 | 30-Oct-14 | 30-Oct-14 | 29-Nov-14 | 18289 | EN91008 | $11,333.90 |
| USS USA Operating Unit | 146-147351 | 30-Oct-14 | 30-Oct-14 | 29-Nov-14 | 18289 | EN91008 | $12,031.68 |
| USS USA Operating Unit | 146-147387 | 31-Oct-14 | 31-Oct-14 | 30-Nov-14 | 18289 | EN91008 | $11,477.98 |
| USS USA Operating Unit | 146-147463 | 3-Nov-14 | 3-Nov-14 | 3-Dec-14 | 18289 | EN91008 | $11,757.65 |
| USS USA Operating Unit | 146-147495 | 3-Nov-14 | 3-Nov-14 | 3-Dec-14 | 16925 | EN90803 | $13,197.90 |
| USS USA Operating Unit | 146-147497 | 3-Nov-14 | 3-Nov-14 | 3-Dec-14 | 16925 | EN90803 | $13,050.30 |
| USS USA Operating Unit | 146-147502 | 3-Nov-14 | 3-Nov-14 | 3-Dec-14 | 16925 | EN90803 | $13,228.65 |
| USS USA Operating Unit | 146-147509 | 3-Nov-14 | 3-Nov-14 | 3-Dec-14 | 16925 | EN90803 | $10,375.05 |
| USS USA Operating Unit | 146-147513 | 3-Nov-14 | 3-Nov-14 | 3-Dec-14 | 16925 | EN90803 | $12,133.95 |
| USS USA Operating Unit | 146-147508 | 3-Nov-14 | 3-Nov-14 | 3-Dec-14 | 16925 | EN90804 | $3,818.40 |
| USS USA Operating Unit | 146-147483 | 3-Nov-14 | 3-Nov-14 | 3-Dec-14 | 18289 | EN91008 | $12,961.11 |
| USS USA Operating Unit | 146-147494 | 3-Nov-14 | 3-Nov-14 | 3-Dec-14 | 18289 | EN91008 | $11,348.03 |
| USS USA Operating Unit | 146-147521 | 4-Nov-14 | 4-Nov-14 | 4-Dec-14 | 16925 | EN90804 | $2,600.18 |
| USS USA Operating Unit | 146-147522 | 4-Nov-14 | 4-Nov-14 | 4-Dec-14 | 18289 | EN91008 | $10,545.73 |
| USS USA Operating Unit | 146-147566 | 4-Nov-14 | 4-Nov-14 | 4-Dec-14 | 16925 | EN90803 | $11,199.15 |
| USS USA Operating Unit | 146-147579 | 4-Nov-14 | 4-Nov-14 | 4-Dec-14 | 16925 | EN90803 | $10,408.88 |
| USS USA Operating Unit | 146-147594 | 4-Nov-14 | 4-Nov-14 | 4-Dec-14 | 16925 | EN90803 | $8,576.18 |
| USS USA Operating Unit | 146-147598 | 4-Nov-14 | 4-Nov-14 | 4-Dec-14 | 16925 | EN90803 | $12,075.53 |
| USS USA Operating Unit | 146-147567 | 4-Nov-14 | 4-Nov-14 | 4-Dec-14 | 18289 | EN91008 | $3,178.13 |
| USS USA Operating Unit | 146-147571 | 4-Nov-14 | 4-Nov-14 | 4-Dec-14 | 18289 | EN91008 | $12,941.33 |
| USS USA Operating Unit | 146-147593 | 4-Nov-14 | 4-Nov-14 | 4-Dec-14 | 18289 | EN91008 | $5,743.23 |
| USS USA Operating Unit | 146-147580 | 4-Nov-14 | 4-Nov-14 | 4-Dec-14 | 18289 | EN91010 | $3,427.13 |
| USS USA Operating Unit | 541-729171 | 4-Nov-14 | 4-Nov-14 | 4-Dec-14 | 19729-RND | EI90455 | $9,636.00 |
| USS USA Operating Unit | 541-729172 | 4-Nov-14 | 4-Nov-14 | 4-Dec-14 | 19729-RND | EI90457 | $990.00 |
| USS USA Operating Unit | 541-729578 | 5-Nov-14 | 5-Nov-14 | 5-Dec-14 | 19729-RND | EI90455 | $9,372.00 |
| USS USA Operating Unit | 541-729579 | 5-Nov-14 | 5-Nov-14 | 5-Dec-14 | 19729-RND | EI90457 | $946.00 |
| USS USA Operating Unit | 488-114339 | 5-Nov-14 | 5-Nov-14 | 5-Dec-14 | 19423  19424 | EN91190 | $5,231.40 |
| USS USA Operating Unit | 488-114341 | 5-Nov-14 | 5-Nov-14 | 5-Dec-14 | 19423  19424 | EN91190 | $5,119.80 |
| USS USA Operating Unit | 488-114342 | 5-Nov-14 | 5-Nov-14 | 5-Dec-14 | 19423  19424 | EN91190 | $5,209.80 |
| USS USA Operating Unit | 488-114343 | 5-Nov-14 | 5-Nov-14 | 5-Dec-14 | 19423  19424 | EN91190 | $5,168.40 |
| USS USA Operating Unit | 488-114345 | 5-Nov-14 | 5-Nov-14 | 5-Dec-14 | 19423  19424 | EN91190 | $5,240.40 |
| USS USA Operating Unit | 488-114352 | 5-Nov-14 | 5-Nov-14 | 5-Dec-14 | 19423  19424 | EN91190 | $5,231.40 |
| USS USA Operating Unit | 488-114353 | 5-Nov-14 | 5-Nov-14 | 5-Dec-14 | 19423  19424 | EN91190 | $5,220.60 |
| USS USA Operating Unit | 488-114355 | 5-Nov-14 | 5-Nov-14 | 5-Dec-14 | 19423  19424 | EN91190 | $5,235.00 |
| USS USA Operating Unit | 488-114356 | 5-Nov-14 | 5-Nov-14 | 5-Dec-14 | 19423  19424 | EN91190 | $4,927.20 |
| USS USA Operating Unit | 488-114357 | 5-Nov-14 | 5-Nov-14 | 5-Dec-14 | 19423  19424 | EN91190 | $5,200.80 |
| USS USA Operating Unit | 488-114358 | 5-Nov-14 | 5-Nov-14 | 5-Dec-14 | 19423  19424 | EN91190 | $5,353.80 |
| USS USA Operating Unit | 488-114359 | 5-Nov-14 | 5-Nov-14 | 5-Dec-14 | 19423  19424 | EN91190 | $5,397.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| USS USA Operating Unit | 488-114360 | 5-Nov-14 | 5-Nov-14 | 5-Dec-14 | 19423  19424 | EN91190 | $5,209.80 |
| USS USA Operating Unit | 488-114361 | 5-Nov-14 | 5-Nov-14 | 5-Dec-14 | 19423  19424 | EN91190 | $5,211.60 |
| USS USA Operating Unit | 488-114362 | 5-Nov-14 | 5-Nov-14 | 5-Dec-14 | 19423  19424 | EN91190 | $5,175.60 |
| USS USA Operating Unit | 488-114367 | 5-Nov-14 | 5-Nov-14 | 5-Dec-14 | 19423  19424 | EN91190 | $5,203.08 |
| USS USA Operating Unit | 146-147642 | 5-Nov-14 | 5-Nov-14 | 5-Dec-14 | 16925 | EN90803 | $11,512.80 |
| USS USA Operating Unit | 146-147652 | 5-Nov-14 | 5-Nov-14 | 5-Dec-14 | 16925 | EN90803 | $14,710.81 |
| USS USA Operating Unit | 146-147643 | 5-Nov-14 | 5-Nov-14 | 5-Dec-14 | 18289 | EN91010 | $2,916.53 |
| USS USA Operating Unit | 541-729460 | 5-Nov-14 | 5-Nov-14 | 5-Dec-14 | 19729-RND | EI90455 | $6,138.00 |
| USS USA Operating Unit | 541-729461 | 5-Nov-14 | 5-Nov-14 | 5-Dec-14 | 19729-RND | EI90456 | $1,122.00 |
| USS USA Operating Unit | 541-729462 | 5-Nov-14 | 5-Nov-14 | 5-Dec-14 | 19729-RND | EI90457 | $3,190.00 |
| USS USA Operating Unit | 546-057452 | 6-Nov-14 | 6-Nov-14 | 6-Dec-14 | 16360 | EN90647 | $13,645.28 |
| USS USA Operating Unit | 146-147729 | 6-Nov-14 | 6-Nov-14 | 6-Dec-14 | 16925 | EN90803 | $9,092.78 |
| USS USA Operating Unit | 146-147730 | 6-Nov-14 | 6-Nov-14 | 6-Dec-14 | 18289 | EN91008 | $5,104.78 |
| USS USA Operating Unit | 541-729840 | 6-Nov-14 | 6-Nov-14 | 6-Dec-14 | 19729-RND | EI90455 | $5,830.00 |
| USS USA Operating Unit | 541-729841 | 6-Nov-14 | 6-Nov-14 | 6-Dec-14 | 19729-RND | EI90456 | $1,012.00 |
| USS USA Operating Unit | 541-729842 | 6-Nov-14 | 6-Nov-14 | 6-Dec-14 | 19729-RND | EI90457 | $3,102.00 |
| USS USA Operating Unit | 541-729868 | 6-Nov-14 | 6-Nov-14 | 6-Dec-14 | 19729-RND | EI90456 | $8,492.00 |
| USS USA Operating Unit | 541-729869 | 6-Nov-14 | 6-Nov-14 | 6-Dec-14 | 19729-RND | EI90457 | $1,650.00 |
| USS USA Operating Unit | 146-147745 | 6-Nov-14 | 6-Nov-14 | 6-Dec-14 | 18289 | EN91008 | $11,283.05 |
| USS USA Operating Unit | 541-730208 | 7-Nov-14 | 7-Nov-14 | 7-Dec-14 | 19642-RND | EI90426 | $1,122.00 |
| USS USA Operating Unit | 541-730209 | 7-Nov-14 | 7-Nov-14 | 7-Dec-14 | 19729-RND | EI90455 | $1,276.00 |
| USS USA Operating Unit | 541-730210 | 7-Nov-14 | 7-Nov-14 | 7-Dec-14 | 19729-RND | EI90456 | $6,314.00 |
| USS USA Operating Unit | 541-730211 | 7-Nov-14 | 7-Nov-14 | 7-Dec-14 | 19729-RND | EI90457 | $1,232.00 |
| USS USA Operating Unit | 146-147920 | 10-Nov-14 | 10-Nov-14 | 10-Dec-14 | 16925 | EN90803 | $11,008.50 |
| USS USA Operating Unit | 146-147921 | 10-Nov-14 | 10-Nov-14 | 10-Dec-14 | 16925 | EN90804 | $3,232.88 |
| USS USA Operating Unit | 541-731543 | 11-Nov-14 | 11-Nov-14 | 11-Dec-14 | 19642-RND | EI90426 | $1,188.00 |
| USS USA Operating Unit | 541-731544 | 11-Nov-14 | 11-Nov-14 | 11-Dec-14 | 19729-RND | EI90455 | $1,298.00 |
| USS USA Operating Unit | 541-731545 | 11-Nov-14 | 11-Nov-14 | 11-Dec-14 | 19729-RND | EI90456 | $3,014.00 |
| USS USA Operating Unit | 541-731546 | 11-Nov-14 | 11-Nov-14 | 11-Dec-14 | 19729-RND | EI90457 | $4,378.00 |
| USS USA Operating Unit | 146-148017 | 11-Nov-14 | 11-Nov-14 | 11-Dec-14 | 16925 | EN90803 | $12,247.73 |
| USS USA Operating Unit | 146-148170 | 12-Nov-14 | 12-Nov-14 | 12-Dec-14 | 16925 | EN90803 | $11,811.08 |
| USS USA Operating Unit | 146-148291 | 13-Nov-14 | 13-Nov-14 | 13-Dec-14 | 16925 | EN90803 | $11,688.08 |
| USS USA Operating Unit | 146-148311 | 13-Nov-14 | 13-Nov-14 | 13-Dec-14 | 16925 | EN90803 | $9,621.68 |
| USS USA Operating Unit | 146-148312 | 13-Nov-14 | 13-Nov-14 | 13-Dec-14 | 16925 | EN90803 | $12,066.30 |
| USS USA Operating Unit | 146-148314 | 13-Nov-14 | 13-Nov-14 | 13-Dec-14 | 16925 | EN90803 | $10,165.95 |
| USS USA Operating Unit | 146-148310 | 13-Nov-14 | 13-Nov-14 | 13-Dec-14 | 18289 | EN91010 | $2,491.95 |
| USS USA Operating Unit | 146-148313 | 13-Nov-14 | 13-Nov-14 | 13-Dec-14 | 18289 | EN91010 | $1,800.98 |
| USS USA Operating Unit | 488-115751 | 14-Nov-14 | 14-Nov-14 | 14-Dec-14 | 19423  19424 | EN91190 | $5,062.20 |
| USS USA Operating Unit | 146-148538 | 17-Nov-14 | 17-Nov-14 | 17-Dec-14 | 18289 | EN91008 | $8,802.70 |
| USS USA Operating Unit | 146-148544 | 17-Nov-14 | 17-Nov-14 | 17-Dec-14 | 18289 | EN91008 | $13,503.51 |
| USS USA Operating Unit | 146-148537 | 17-Nov-14 | 17-Nov-14 | 17-Dec-14 | 18289 | EN91010 | $1,781.55 |
| USS USA Operating Unit | 146-148641 | 18-Nov-14 | 18-Nov-14 | 18-Dec-14 | 18289 | EN91008 | $11,062.70 |
| USS USA Operating Unit | 146-148656 | 18-Nov-14 | 18-Nov-14 | 18-Dec-14 | 18289 | EN91008 | $11,667.25 |
| USS USA Operating Unit | 146-148682 | 19-Nov-14 | 19-Nov-14 | 19-Dec-14 | 16925 | EN90803 | $8,809.88 |
| USS USA Operating Unit | 146-148681 | 19-Nov-14 | 19-Nov-14 | 19-Dec-14 | 18289 | EN91008 | $3,101.85 |
| USS USA Operating Unit | 488-116416 | 19-Nov-14 | 19-Nov-14 | 19-Dec-14 | 19370 | EQ91319 | $8,478.00 |
| USS USA Operating Unit | 488-116441 | 19-Nov-14 | 19-Nov-14 | 19-Dec-14 | 19423  19424 | EN91190 | $10,069.37 |
| USS USA Operating Unit | 488-116442 | 19-Nov-14 | 19-Nov-14 | 19-Dec-14 | 19423  19424 | EN91190 | $5,288.76 |
| USS USA Operating Unit | 488-116452 | 19-Nov-14 | 19-Nov-14 | 19-Dec-14 | 19423  19424 | EN91190 | $9,440.28 |
| USS USA Operating Unit | 146-148697 | 19-Nov-14 | 19-Nov-14 | 19-Dec-14 | 18289 | EN91008 | $12,079.71 |
| USS USA Operating Unit | 146-148728 | 19-Nov-14 | 19-Nov-14 | 19-Dec-14 | 18289 | EN91008 | $8,511.73 |
| USS USA Operating Unit | 146-148736 | 19-Nov-14 | 19-Nov-14 | 19-Dec-14 | 18289 | EN91008 | $7,390.20 |
| USS USA Operating Unit | 146-148745 | 19-Nov-14 | 19-Nov-14 | 19-Dec-14 | 18289 | EN91008 | $13,560.00 |
| USS USA Operating Unit | 146-148727 | 19-Nov-14 | 19-Nov-14 | 19-Dec-14 | 18289 | EN91010 | $3,463.20 |
| USS USA Operating Unit | 146-148735 | 19-Nov-14 | 19-Nov-14 | 19-Dec-14 | 18289 | EN91010 | $12,348.75 |
| USS USA Operating Unit | 146-148737 | 19-Nov-14 | 19-Nov-14 | 19-Dec-14 | 18289 | EN91010 | $5,833.05 |
| USS USA Operating Unit | 146-148852 | 20-Nov-14 | 20-Nov-14 | 20-Dec-14 | 18289 | EN91008 | $6,186.75 |
| USS USA Operating Unit | 146-148873 | 20-Nov-14 | 20-Nov-14 | 20-Dec-14 | 18289 | EN91008 | $12,317.00 |
| USS USA Operating Unit | 146-148851 | 20-Nov-14 | 20-Nov-14 | 20-Dec-14 | 18289 | EN91010 | $6,263.18 |
| USS USA Operating Unit | 541-737071 | 21-Nov-14 | 21-Nov-14 | 21-Dec-14 | 19729-RND | EI90455 | $2,442.00 |
| USS USA Operating Unit | 541-737072 | 21-Nov-14 | 21-Nov-14 | 21-Dec-14 | 19729-RND | EI90463 | $7,106.00 |
| USS USA Operating Unit | 146-150200 | 10-Dec-14 | 10-Dec-14 | 9-Jan-15 | 18289 | EN91008 | $11,170.05 |
| USS USA Operating Unit | 146-150201 | 10-Dec-14 | 10-Dec-14 | 9-Jan-15 | 18289 | EN91008 | $11,396.05 |
| USS USA Operating Unit | 146-150209 | 10-Dec-14 | 10-Dec-14 | 9-Jan-15 | 18289 | EN91008 | $12,591.03 |
| USS USA Operating Unit | 146-150303 | 11-Dec-14 | 11-Dec-14 | 10-Jan-15 | 18289 | EN91008 | $3,878.73 |
| USS USA Operating Unit | 146-150316 | 11-Dec-14 | 11-Dec-14 | 10-Jan-15 | 18289 | EN91008 | $13,367.90 |
| USS USA Operating Unit | 146-150321 | 11-Dec-14 | 11-Dec-14 | 10-Jan-15 | 18289 | EN91008 | $11,853.70 |
| USS USA Operating Unit | 146-150304 | 11-Dec-14 | 11-Dec-14 | 10-Jan-15 | 18289 | EN91010 | $7,908.75 |
| USS USA Operating Unit | 146-150707 | 17-Dec-14 | 17-Dec-14 | 16-Jan-15 | 18289 | EN91008 | $9,816.88 |
| USS USA Operating Unit | 146-150715 | 17-Dec-14 | 17-Dec-14 | 16-Jan-15 | 18289 | EN91008 | $10,175.65 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| USS USA Operating Unit | 146-150727 | 17-Dec-14 | 17-Dec-14 | 16-Jan-15 | 18289 | EN91008 | $6,647.23 |
| USS USA Operating Unit | 146-150731 | 17-Dec-14 | 17-Dec-14 | 16-Jan-15 | 18289 | EN91008 | $8,257.48 |
| USS USA Operating Unit | 146-150708 | 17-Dec-14 | 17-Dec-14 | 16-Jan-15 | 18289 | EN91010 | $2,053.50 |
| USS USA Operating Unit | 146-150716 | 17-Dec-14 | 17-Dec-14 | 16-Jan-15 | 18289 | EN91010 | $3,313.35 |
| USS USA Operating Unit | 146-150726 | 17-Dec-14 | 17-Dec-14 | 16-Jan-15 | 18289 | EN91010 | $5,294.71 |
| USS USA Operating Unit | 146-150732 | 17-Dec-14 | 17-Dec-14 | 16-Jan-15 | 18289 | EN91010 | $3,088.58 |
| USS USA Operating Unit | 146-150813 | 18-Dec-14 | 18-Dec-14 | 17-Jan-15 | 18289 | EN91008 | $12,065.58 |
| USS USA Operating Unit | 416-596275 | 18-Dec-14 | 18-Dec-14 | 17-Jan-15 | 16201 STEEL TECH PUPS | ET90474 | $982.46 |
| USS USA Operating Unit | 416-596276 | 18-Dec-14 | 18-Dec-14 | 17-Jan-15 | 16201 STEEL TECH PUPS | ET90474 | $4,930.95 |
| USS USA Operating Unit | 416-596279 | 18-Dec-14 | 18-Dec-14 | 17-Jan-15 | 16201 STEEL TECH PUPS | ET90474 | $1,153.75 |
| USS USA Operating Unit | 416-596282 | 18-Dec-14 | 18-Dec-14 | 17-Jan-15 | 16201 STEEL TECH PUPS | ET90474 | $619.12 |
| USS USA Operating Unit | 146-151052 | 23-Dec-14 | 23-Dec-14 | 22-Jan-15 | 18289 | EN91008 | $7,508.85 |
| USS USA Operating Unit | 146-151056 | 23-Dec-14 | 23-Dec-14 | 22-Jan-15 | 18289 | EN91008 | $9,102.15 |
| USS USA Operating Unit | 146-151053 | 23-Dec-14 | 23-Dec-14 | 22-Jan-15 | 18289 | EN91010 | $3,796.20 |
| USS USA Operating Unit | 146-151057 | 23-Dec-14 | 23-Dec-14 | 22-Jan-15 | 18289 | EN91010 | $3,130.20 |
| USS USA Operating Unit | 416-597222 | 29-Dec-14 | 29-Dec-14 | 28-Jan-15 | 19281-3 | ET90258 | $20,904.08 |
| USS USA Operating Unit | 546-070355 | 30-Dec-14 | 30-Dec-14 | 29-Jan-15 | 16409 | EN90645 | $13,050.83 |
| USS USA Operating Unit | 546-070303 | 30-Dec-14 | 30-Dec-14 | 29-Jan-15 | 16409 | EN90645 | $14,951.70 |
| USS USA Operating Unit | 546-070325 | 30-Dec-14 | 30-Dec-14 | 29-Jan-15 | 16409 | EN90645 | $9,543.23 |
| USS USA Operating Unit | 546-070326 | 30-Dec-14 | 30-Dec-14 | 29-Jan-15 | 16409 | EN90645 | $9,582.08 |
| USS USA Operating Unit | 546-071223 | 6-Jan-15 | 6-Jan-15 | 5-Feb-15 | 16409 | EN90645 | $12,137.85 |
| USS USA Operating Unit | 419-598394 | 7-Jan-15 | 7-Jan-15 | 6-Feb-15 | 16201  DP | ET90481 | $2,813.25 |
| USS USA Operating Unit | 546-071535 | 7-Jan-15 | 7-Jan-15 | 6-Feb-15 | 16360 | EN90640 | $16,888.65 |
| USS USA Operating Unit | 546-071544 | 7-Jan-15 | 7-Jan-15 | 6-Feb-15 | 16829 | EQ90748 | $1,732.80 |
| USS USA Operating Unit | 541-047447 | 7-Jan-15 | 7-Jan-15 | 6-Feb-15 | 16405-GANN SW | EQ91130 | $5,333.65 |
| USS USA Operating Unit | 146-151989 | 12-Jan-15 | 12-Jan-15 | 11-Feb-15 | 18289 | EN91008 | $8,866.13 |
| USS USA Operating Unit | 146-151988 | 12-Jan-15 | 12-Jan-15 | 11-Feb-15 | 18289 | EN91010 | $3,487.50 |
| USS USA Operating Unit | 146-152139 | 13-Jan-15 | 13-Jan-15 | 12-Feb-15 | 18289 | EN91008 | $6,923.63 |
| USS USA Operating Unit | 146-152138 | 13-Jan-15 | 13-Jan-15 | 12-Feb-15 | 18289 | EN91010 | $5,037.50 |
| USS USA Operating Unit | 541-760751 | 15-Jan-15 | 15-Jan-15 | 14-Feb-15 | 1365 | EN90991 | $28,613.55 |
| USS USA Operating Unit | 541-761241 | 16-Jan-15 | 16-Jan-15 | 15-Feb-15 | 1365 | EN90991 | $25,483.85 |
| USS USA Operating Unit | 546-074749 | 19-Jan-15 | 19-Jan-15 | 18-Feb-15 | 16409 | EN91675 | $14,427.23 |
| USS USA Operating Unit | 546-074754 | 19-Jan-15 | 19-Jan-15 | 18-Feb-15 | 16409 | EN91675 | $13,505.93 |
| USS USA Operating Unit | 546-074794 | 19-Jan-15 | 19-Jan-15 | 18-Feb-15 | 16409 | EN91675 | $13,697.40 |
| USS USA Operating Unit | 546-074824 | 19-Jan-15 | 19-Jan-15 | 18-Feb-15 | 16409 | EN91675 | $14,701.95 |
| USS USA Operating Unit | 546-075711 | 21-Jan-15 | 21-Jan-15 | 20-Feb-15 | 16409 | EN91675 | $11,913.08 |
| USS USA Operating Unit | 546-075641 | 21-Jan-15 | 21-Jan-15 | 20-Feb-15 | 16409 | EN91675 | $12,690.08 |
| USS USA Operating Unit | 546-075645 | 21-Jan-15 | 21-Jan-15 | 20-Feb-15 | 16409 | EN91675 | $12,157.28 |
| USS USA Operating Unit | 541-766626 | 1-Feb-15 | 29-Jan-15 | 3-Mar-15 | 1365 | EN91487 | $13,333.95 |
| USS USA Operating Unit | 541-766627 | 1-Feb-15 | 29-Jan-15 | 3-Mar-15 | 16364 | EN91491 | $12,684.38 |
| USS USA Operating Unit | 546-078154 | 1-Feb-15 | 29-Jan-15 | 3-Mar-15 | | EN91820 | $12,226.20 |
| | | | | | | **Total AR** | **$2,193,930.62** |



**USS STANDARD TERMS AND CONDITIONS OF SALE**

Governing Sales Made by United States Steel Corporation or United States Steel International, Inc.

1.  **Payments:** Payments shall be made at par in legal tender of the United States of America, and directed to the payment address, lockbox or other means specified in Seller's invoice or EDI payment instructions. Buyer shall make such arrangements for payment as Seller shall from time to time reasonably require and Seller may suspend scheduling, production, shipment or delivery of goods until such arrangements are made. If Seller reasonably believes that Buyer is or may become unable to perform its obligations hereunder, Seller may require that Buyer provide Seller with security for, or other assurance of, performance, in either case acceptable to Seller. In the event that Buyer fails to do so or fails to make payment in full within the time period set forth on the invoice or expressly agreed upon in writing by the parties, such failure will constitute a material breach of contract by Buyer permitting Seller to suspend scheduling, production, shipment or delivery of goods under this contract or any other contract between Buyer and Seller. Buyer shall pay to Seller interest on any unpaid amount at the maximum rate permitted by law or the Prime Rate in effect by JPMorgan Chase Bank, N.A. (or any successor institution) on the first day of the month such amounts first become past due plus 3.5%, whichever is less. Seller shall have, in addition, all other remedies permitted to Seller by law, equity or this contract. If Seller takes legal action to collect any amount due hereunder, Buyer shall pay all dispute resolution costs, including court costs plus reasonable legal fees incurred by Seller in bringing such legal action. Seller shall have the right to set off against any monies due Seller hereunder any obligations of Seller or its affiliates to Buyer.

2.  **Taxes:** To the extent legally permissible, all present and future taxes imposed by any federal, state or local authority of any country which Seller may be required to pay or collect, upon or with reference to the sale, purchase, transportation, delivery, storage, use or consumption of the goods or services, including taxes upon or measured by the receipts therefrom (except net income and equity franchise taxes) shall be for the account of Buyer. The purchase is subject to state or local use tax, unless it is specifically exempt from taxation. The purchase is not exempt merely because the Seller was not required to collect sales tax or made by remote means. Buyer assumes responsibility for correctly assessing and remitting any use tax due to the proper jurisdiction(s).

3.  **Risk of Loss; Incidental Transportation and Storage Charges; Title:** Risk of loss shall pass to Buyer upon tender of delivery at the delivery point specified in this contract. Any charges at the delivery point for spotting, switching, handling, storage and other accessorial services, and demurrage, shall be for Buyer's account. Seller shall have the right to assess a storage and handling charge for goods left in Seller's possession after notification to Buyer that the goods are available to ship. Title to the goods shall pass to Buyer upon Seller's receipt of full payment for the goods.

4.  **Time of Shipment and Shipping:** Except with respect to payment of amounts due by Buyer to Seller hereunder, time is not of the essence hereunder. Each shipment is a separate sale. Seller reserves the right to ship all or any part of the goods from any shipping point other than the shipping point or points specified herein. Shipment in installments is permitted. Buyer shall furnish shipping instructions to enable Seller to perform the contract in accordance with its terms. Failure by Buyer to do so shall entitle Seller, in addition to all other rights, to cancel such portion of the contract that has not been performed, or to make shipment in such manner as Seller may elect. Seller will use reasonable efforts to comply with Buyer's requests regarding transportation, but Seller reserves the right to make alternate transportation arrangements, even if at a higher cost to Buyer, if the transportation specified by Buyer is deemed by Seller to be unavailable or unsatisfactory. Seller shall notify Buyer of any such change within a reasonable time.

5.  **Specification Variations:** Except in the particulars specified by Buyer and expressly agreed to in a writing signed by Seller, the goods furnished hereunder shall be produced in accordance with Seller's standard practices. All goods, however, including those produced to meet an exact specification, shall be subject to Seller's mill tolerances and variations consistent with good mill practice in respect to: (a) dimension, weight, straightness, section, composition and mechanical and/or physical properties; (b) normal variations in surface and internal conditions and in quality; (c) deviations from tolerances and variations consistent with practical testing and inspection methods; and (d) regular mill practice on over and under shipment.

6.  **Inspection:** Where mill inspection is made by Buyer, Buyer's inspector shall be deemed the agent of Buyer with authority to waive specified tests and details of test procedure and to accept goods as conforming to this contract with respect to all characteristics of such goods for which such inspection is made. In all cases Buyer shall conduct a timely inspection of goods upon receipt or within a commercially reasonable time and manner not to exceed fifteen (15) days from such receipt. Buyer's use of the goods in its production operations shall be deemed an acceptance of the goods involved as conforming to this contract unless Buyer provides Seller written notice of rejection or of a non-conformity respecting such goods prior to or concurrent with Buyer's use thereof. Buyer's inspection or failure to inspect shall not delay payment.

7.  **Force Majeure, Allocation of Production:** In the event either party's performance hereunder is delayed or made impossible or commercially impracticable due to causes including fire, explosion, war, terrorism, strike or other differences with workers, shortage of energy sources, facility, material or labor, delay in or lack of transportation, temporary or permanent plant shutdown, breakdown or accident, compliance with or other action taken to carry out the intent or purpose of any law, regulation, or other requirement of any governmental authority, or any cause beyond that party's reasonable control (each, a "force majeure" event), that party shall have such additional time in which to perform this contract as may be reasonably necessary under the circumstances. However, the obligation of Buyer to pay for goods delivered is never suspended or delayed. In addition, if due to a force majeure event or any other cause, Seller is unable to produce sufficient goods to meet all demands from customers and internal uses, Seller shall have the right to allocate production among its customers and plants in any manner which Seller may determine, acting reasonably. This Section 7 is to be applied in conjunction with UCC Section 2-615, Excuse by Failure of Presupposed Conditions, in the case of domestic U.S. sales; provided, however, that in the event of a conflict, this Section 7 shall govern.

1 of 5

EXHIBIT
B

**8.**   **Patent Indemnity:** Seller shall indemnify Buyer for: (a) all direct and actual damages recovered from Buyer by a third party in a legal action for infringement of a U. S. patent claim covering goods furnished hereunder, on condition that Buyer promptly notifies Seller of the alleged infringement, affords Seller the opportunity to assume defense thereof, and cooperates with Seller in defense of the action and in any feasible mitigation of damages; and (b) Buyer's directly and reasonably incurred expenses in defending such legal action if, after such notice and opportunity given by Buyer, Seller elects not to assume such defense, provided that such election by Seller shall not otherwise affect Buyer's aforesaid obligations. In like manner, Buyer shall indemnify Seller, and Seller's indemnity of Buyer hereunder shall not apply, with respect to a claim arising out of Seller's compliance with special designs or specifications furnished by Buyer, now or hereafter forming a part of this contract, or with other written instructions given by Buyer for the purpose of directing the manner in which Seller shall perform this contract. In no event shall either party have any liability hereunder for indirect or consequential losses or damages suffered, or other expenses incurred, by the other party hereto or any third party by reason of any patent infringement claim.

**9.**   **Warranty; Disclaimers:** SELLER WARRANTS THAT THE GOODS FURNISHED HEREUNDER WILL BE FURNISHED IN ACCORDANCE WITH THE SPECIFICATIONS SET FORTH OR INCORPORATED BY EXPRESS REFERENCE ON THE FACE OF ANY OFFER, ACCEPTANCE OR ORDER ACKNOWLEDGEMENT (AS THE CASE MAY BE) ISSUED BY SELLER THAT INCORPORATES THESE STANDARD TERMS AND CONDITIONS OF SALE BY REFERENCE. HOWEVER, NO WARRANTY OF FITNESS FOR ANY PARTICULAR PURPOSE NOR ANY OTHER REPRESENTATION OR WARRANTY, WHETHER EXPRESS OR IMPLIED, IS MADE RESPECTING SAID GOODS, OR THE PRODUCTION THEREOF AND THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE AFOREMENTIONED WARRANTY WITH RESPECT TO SPECIFICATIONS SET FORTH OR INCORPORATED BY EXPRESS REFERENCE ON THE FACE OF ANY OFFER, ACCEPTANCE OR ORDER ACKNOWLEDGEMENT (AS THE CASE MAY BE) ISSUED BY SELLER THAT INCORPORATES THESE STANDARD TERMS AND CONDITIONS OF SALE BY EXPRESS REFERENCE. ANY TECHNICAL ADVICE PROVIDED BY SELLER WITH RESPECT TO THE USE OF GOODS SOLD HEREUNDER SHALL BE FOR INFORMATIONAL PURPOSES ONLY, AND SELLER MAKES NO REPRESENTATION OR WARRANTY NOR ASSUMES ANY OBLIGATION OR LIABILITY FOR ANY SUCH ADVICE. NOTWITHSTANDING ANYTHING TO THE CONTRARY, NO REPRESENTATION OR WARRANTY WHATSOEVER IS PROVIDED WITH RESPECT TO ANY GOODS SOLD ON AN 'AS IS' BASIS OR WITH RESPECT TO MATERIALS COMMONLY KNOWN AS 'NONPRIME', 'SECONDARY' OR 'DECLASSED' MATERIALS.

**10.**   **Limitation of Remedies:** Seller will replace, at the delivery point specified herein, any goods furnished hereunder that are confirmed by Seller to be defective or otherwise fail to conform to Seller's warranty in this contract, or, at Seller's option, Seller will repay the price paid for such goods plus any transportation charges paid by Buyer in addition to such price and less any scrap value realized by Buyer for such goods. Claims for damaged or non-conforming goods must be made, in writing, promptly, and in no event later than thirty (30) days following delivery of the goods to Buyer or all such claims shall be deemed waived. Buyer shall set aside, protect, and hold such goods without further processing until Seller has an opportunity to inspect and advise of the disposition, if any, to be made of such goods. In no event shall any goods be returned, reworked, or scrapped by Buyer without the express written authorization of Seller. Buyer's exclusive remedies with respect to any goods furnished by Seller hereunder that are found to be defective or otherwise not in conformity with Seller's warranty or this contract shall be limited exclusively to the right to replacement thereof or, at Seller's option, to repayment of the price, as above provided. Seller's maximum liability for any other breach of this contract shall be limited to the difference between the delivered price of the goods covered hereby and the market price of such goods at Buyer's destination at the time of such breach. IN NO EVENT SHALL SELLER BE LIABLE FOR PERSONAL INJURY, PROPERTY DAMAGE, LOSS OF PROFIT, DELAY, OR ANY SPECIAL, EXEMPLARY, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES WHETHER ARISING FROM CONTRACT, BREACH OF CONTRACT, TORT, SELLER'S NEGLIGENCE, STRICT LIABILITY, OR ANY EXPRESS OR IMPLIED WARRANTY, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. NO CLAIMS OF ANY NATURE, WHETHER BASED ON CONTRACT OR OTHERWISE, MAY BE BROUGHT AGAINST THE SELLER OR ANY OF ITS AFFILIATES TWELVE (12) MONTHS AFTER THE DELIVERY OF THE GOODS TO THE BUYER.

**11.**   **Exclusive Terms and Conditions; Acceptance; Modification:** These Terms and Conditions of Sale constitute the complete, exclusive and fully integrated statement of terms and conditions between the Buyer and Seller with regard to the matters contained herein. No terms or conditions (whether consistent or inconsistent) other than those stated herein and no agreement or understanding, oral or written, in any way purporting to modify these Terms and Conditions of Sale shall be binding on Seller unless expressly agreed upon in writing by authorized representatives of both Seller and Buyer. In the event of a conflict between these Terms and Conditions of Sale and any purchase order (or other document expressly made a part of this contract) signed by both parties, the terms of the signed document shall prevail. Buyer's placement of an order or release for, or taking delivery of, any product of Seller that is the subject of this contract shall constitute acceptance of the Seller's offer under these terms and conditions and Seller hereby objects to and rejects any and all additional or different terms proposed by Buyer, whether contained in Buyer's purchase orders, production releases or shipping release forms, or related correspondence or any other documents including emails. All proposals, quotes, request for quotes, purchase orders, negotiations, representations and other communications, if any, made prior and with reference hereto are merged herein.

**12.**   **Conditions Incorporated by Reference:** Any clause required to be included in a contract of this type by any applicable law or regulation shall be deemed to be incorporated herein. Without limiting the generality of the foregoing, to the extent applicable, **Buyer shall abide by the requirements of 41 CFR 60-1.4(a), 60-300.5(a) and 60-741.5(a). These regulations prohibit discrimination against qualified individuals based on their status as protected veterans or individuals with disabilities, and prohibit discrimination against all individuals based on their race, color, religion, sex, or national origin. Moreover, these regulations require that covered prime contractors and subcontractors take affirmative action to employ and advance in employment individuals without regard to race, color, religion, sex, national origin, protected veteran status or disability.**

**13.**   **Governing Law:** This contract shall be governed by the laws of Pennsylvania, U.S.A., exclusive of its conflicts of laws rules and of any principles therein that would require the application of The United Nations Convention on Contracts for the International Sale of Goods ("CISG"). CISG shall not apply to this or any other agreement between the parties. Seller and Buyer each irrevocably agrees that any legal proceeding

seeking the enforcement or interpretation of this contract shall be brought in the state or federal courts located in Pittsburgh, Pennsylvania, U.S.A. Each Party hereby irrevocably submits itself to the jurisdiction of any such courts, and waives any objection it may now or hereafter have to the placing of venue in any such courts and any right to remove any such action or proceeding to another court.

14. **Export Control and Economic Sanctions Compliance:**

    (a)    Any sale made pursuant to this contract shall at all times be in strict conformity with all applicable export control laws and regulations, and Buyer represents and warrants that it will comply at all times with all applicable export control regulations. Buyer represents and warrants that it will not make any disposition, by way of trans-shipment, export, re-export, diversion, or otherwise, of the goods provided by Seller, except as such laws and regulations may expressly permit, with Buyer bearing full responsibility for obtaining any required export licenses or other permits, and that no such disposition or transfer will be made other than to the ultimate country of destination specified in connection with this contract. Buyer will furnish to Seller, upon request, proof that the goods have been entered into, and will remain in, the specified destination country. Buyer further represents and warrants that it will not export, re-export, transfer (in-country), or supply any goods or Seller information to any end-user or for any end-use requiring a specific export license under the U.S. Export Administration Regulations or any other applicable export control regulation.

    (b)    Buyer represents and warrants that, with respect to its obligations under this contract and any other agreement with Seller, it is currently in compliance with, and shall remain in compliance with, the laws, regulations, and Executive Orders administered by the Office of Foreign Assets Control ("OFAC") of the U.S. Department of the Treasury and any other applicable economic sanctions, which prohibit, among other things, engaging in transactions with, and providing services to, certain countries, territories, entities, and individuals. Buyer represents and warrants that neither Buyer nor any person having a beneficial interest in Buyer is (i) a person whose name appears on the list of Specially Designated Nationals and Blocked Persons published by OFAC (an "OFAC Listed Person") or (ii) a department, agency, or instrumentality of, or is otherwise directly or indirectly controlled by or acting on behalf of, any OFAC Listed Person or the government of a country subject to comprehensive U.S. economic sanctions administered by OFAC, currently Iran, Sudan, Cuba, Burma, Syria and North Korea (each OFAC Listed Person and each other entity and country described in clause (ii), a "Blocked Person").

    (c).    Buyer further represents and warrants that none of the goods or services that it is receiving from Seller will involve, require interaction with, concern, or relate to, in whole or in part, any Blocked Person or their assets or products.

    (d)    Buyer hereby acknowledges and agrees that Buyer's breach of any of the terms of this Article at any time shall be a material default of this contract.

    (e)    Buyer hereby agrees to indemnify, defend, and hold harmless Seller and its officers, directors, and employees from and against any and all claims, demands, damages, costs, penalties, and fines arising in connection with any alleged breach by Buyer or its agents of this representation and warranty. Seller may reject, suspend, or cancel any transaction to a Blocked Person without penalty or payment for the rejected, suspended, or cancelled goods or services, and/or cancel or terminate this contract, or any other applicable agreement with Seller, in whole or in part, if it has a good faith basis for believing that Buyer or its agent has violated or intends to violate the above representation and warranty. Buyer will pay all penalties and damages incurred as a result of its breach of the terms of this Article.

    (f)    **Drawback:** Seller reserves to itself the right to drawback of duty paid on materials used in the manufacture of the goods sold hereunder. Buyer agrees to furnish Seller proof of exportation, as well as any other necessary documents, and to cooperate with Seller to facilitate the collection of such drawback.

15. **Anti-Corruption Compliance:**

For any Buyer that is an end user of Seller's products:

    (a)    Buyer hereby represents and warrants that Buyer is aware of and familiar with the provisions of the U.S. Foreign Corrupt Practices Act, as amended ("FCPA"), and its purposes and any other anti-corruption law applicable in a jurisdiction in which Buyer may have conducted or will conduct business and that neither Buyer nor any of its agents or intermediaries engaged in connection with this contract has violated any applicable anti-corruption law. Buyer represents and warrants that it, and each of its directors, officers, and employees, as well as any subcontractors, agents, representatives, vendors, and any other intermediaries/third parties engaged in connection with this contract, will comply in full with the FCPA and any other applicable anti-corruption laws at all times in connection with this contract.

For any Buyer that is not an end user of Seller's products, such as a sales agent, reseller, or distributor that is selling products on behalf of Seller:

    (a)    Buyer hereby represents and warrants to Seller that Buyer is aware of and familiar with the provisions of the U.S. Foreign Corrupt Practices Act, as amended ("FCPA"), and its purposes and any other anti-corruption law applicable in a jurisdiction in which Buyer may have conducted or will conduct business and that neither Buyer nor any of its agents or intermediaries that will be engaged in connection with this contract has violated any applicable anti-corruption law. In connection with the goods and/or services that are the subject of this contract, Buyer represents and warrants that it, and each of its directors, officers, and employees, as well as any subcontractors, agents, representatives, vendors, and any other intermediaries/third parties that it engages pursuant to this contract, will comply in full with the FCPA and any other applicable anti-corruption laws.

(b)     Buyer hereby represents and warrants that it has not given and will not give, offer, or promise, directly or indirectly, money or any other thing of value to a Government Official, or to any other individual or entity under circumstances that would cause Buyer to know or have reason to know that all or any portion of such money or thing of value has been or will be offered to any Government Official, for the purpose of inducing the Government Official to do any act or make any decision in his official capacity or use his influence with a government or instrumentality thereof in order to affect any act or decision of such government or instrumentality or to assist Buyer or Seller in obtaining or retaining any business or securing any other improper advantage.

(c)     For purposes of this contract, a "Government Official" is (a) an officer, employee, or any person acting in an official capacity for or on behalf of a government, including its departments, agencies, instrumentalities, quasi- or partially-government owned or controlled entities, or recently privatized government entities; (b) an officer or employee of an international organization (e.g., World Bank, United Nations); (c) an officer or employee of a political party or any party official, or a candidate for political office; (d) a member of the royal or ruling family of a country; or (e) any individual who is a principal or senior manager of, or who has an immediate family or close personal relationship or business ties with, any of the foregoing individuals or entities.

(d)     Buyer hereby represents and warrants to Seller that Buyer has not given, offered, or promised, and will not give, offer, or promise, directly or indirectly, money or any other thing of value to any commercial individual or entity intended to cause the recipient to do something favoring Buyer or Seller or to refrain from doing something disadvantaging Buyer or Seller, or otherwise intended to gain Buyer or Seller an illicit advantage in a commercial transaction.

(e)     Buyer and its directors, officers, employees, subcontractors, agents, representatives, vendors, and any other third parties that it engages in connection with this contract will not provide to Government Officials, in connection with or on behalf of Seller, (a) any facilitation payments or (b) charitable and/or political contributions.  Buyer will obtain advance written permission from Seller before providing or paying for any gifts, entertainment, or travel for Government Officials in connection with the goods and/or services that are the subject of this contract, other than nominal and customary items that are permissible under local law (i.e., a Seller-logo coffee mug).

(f)     At Seller's discretion, Seller may provide anti-corruption training to Buyer, which will be completed within a reasonable period of time and, in any event, generally prior to beginning performance.

(g)     Neither Buyer nor any of its directors, officers, employees, subcontractors, agents, representatives, vendors, or any other third parties that it may engage in connection with this contract is a Government Official or has a family relationship with any Government Official in the jurisdictions in which it or they will conduct business relating to the goods and/or services that are the subject of this contract, except as disclosed to, and agreed to in writing by, Seller.

(h)     If, during the course of the contract, Buyer learns that it or any of its directors, officers, employees, subcontractors, agents, representatives, vendors, or any other third parties that it engages in connection with this contract will become a Government Official or an agent, representative or consultant to a Government Official, Buyer will promptly disclose this to Seller in writing and will ensure that the contract and continued performance thereunder remains in compliance with U.S. and local law.

(i)     Without Seller's prior written approval, neither Buyer nor any of its directors, officers, employees, subcontractors, agents, representatives, vendors, nor any other third parties that it engages will engage any other person in connection with the goods and/or services that are the subject of this contract or make any commitments on behalf of Seller to a government, government-owned or government-controlled entity or a Government Official.  Buyer shall keep Seller closely advised of all communications and contacts with Government Officials made on behalf of Seller in connection with the goods and/or services that are the subject of this contract.

(j)     Buyer agrees that it will, at the request of Seller and at least annually, certify the continuing accuracy of the anti-corruption representations and warranties set forth in this contract.  Buyer further agrees that, should it learn of information regarding any possible violation of laws and regulations in connection with the transactions that are the subject of this contract, Buyer will immediately advise Seller of such knowledge or suspicion.  Buyer further agrees that it will cooperate in any resulting investigation by Seller or its agents.

(k)     Buyer agrees that it shall maintain, in accurate and complete order, all books and records (whether in printed, electronic, or other format) associated with the services and transactions contemplated by this contract.  Such books and records shall include, without limitation, records relating to any (i) gifts, entertainment, or travel for Government Officials and potential customers and (ii) business, financial or other transactions between Buyer and Government Officials and potential customers.  Such books and records, and all other books and records of Buyer relating to the contract, shall be open to inspection and audit by representatives of Seller during reasonable business hours during the life of the contract and for a period of seven (7) years thereafter.  Any failure by Buyer to cooperate fully in making available all books and records covered by an audit request pursuant to this contract, so as to permit a timely and complete inspection and audit thereof, shall constitute a material breach of the contract.

(l)     Termination:  Seller may terminate this contract immediately by written notice for cause in the event that (i) Seller forms a reasonable, good faith belief that Buyer or one of its directors, officers, employees, subcontractors, agents, representatives, vendors, or any other third parties that it engages in connection with the goods and/or services that are the subject of this contract has engaged in conduct in violation of this contract or applicable anti-corruption laws in connection with this contract; or (ii) the continuation of this contract would violate any applicable anti-corruption laws.  In the event of such termination, all existing contractual obligations (including further compensation) may be declared null and void by Seller, and all offers outstanding at the time of termination shall be deemed rescinded.

16.  **Language:**  The English language version of this document will control in the event of any disagreement over any translation.

17.  **Waiver:**  Waiver by Seller of any breach of these provisions shall not be construed as a waiver of any other breach.

18.  **Assignment; Source of Production:**

    (a)  Buyer shall not assign its rights or obligations hereunder without the prior written consent of Seller, which consent shall not be unreasonably withheld or delayed.  Any attempted assignment in contravention of the foregoing shall be void.

    (b)  Subject to compliance with Buyer's applicable product quality, specifications and delivery requirements hereunder, Seller reserves the right to source production of the goods supplied hereunder from any facilities located in North America which are owned directly by any entity controlling, controlled by or under common control with Seller.  Seller shall have no responsibility for meeting Buyer's country-of-origin product content requirements (if any) unless Seller is apprised in writing of such requirements at the time Buyer places its order with Seller, or in the case of standing orders, at or before the latest time Buyer may issue a release in accordance with Seller's production scheduling requirements.

19.  **Construction:**  No provision of this contract may be construed against the Seller as the drafting party. The term "including" means "including without limitation."  The term "days" means calendar days unless otherwise expressly stated.

20.  **Termination:**  In addition to any other remedies available to Seller at law or under this contract, Seller may terminate any contract with the Buyer in the event that:

    (a)  Buyer fails to perform its obligations under or otherwise breaches any provisions of this contract or any other contract between the Buyer and Seller or any of Seller's affiliates;

    (b)  Buyer ceases to carry on its business substantially as such business is conducted on the date of the contract between the Buyer and Seller and such change in circumstances modifies Seller's obligations or impairs either party's ability to discharge its obligations under this contract;

    (c)  Buyer institutes or suffers the institution against it of bankruptcy, reorganization, liquidation receivership or similar proceedings;

    (d)  Buyer generally becomes unable to pay its debts as they become due;

    (e)  any term, condition or provision of this contract or any other contract between the Buyer and Seller becomes invalid or illegal under any applicable law, rule or regulation; or

    (f)  an event of Force Majeure listed in Section 7 of these Terms and Conditions continues for a period of more than thirty (30) days.

21.  **Cancellation by Buyer:**  Buyer may not cancel an order once placed with Seller.

22.  **Seller's Best Interests:**  In the event Buyer is a reseller of Seller's products, Buyer shall at all times: (i) represent Seller and its products in good faith and in a professional manner; and (ii) not engage in any deceptive, misleading, illegal or unethical practices that may be detrimental to Seller or Seller's products.  In addition to any of its remedies under this contract, at law and in equity, Seller reserves the right to terminate this contract and any other contract between Buyer and Seller or any of Seller's affiliates in the event of any material breach by Buyer of its duties under this paragraph.

23.  **Third Party Rights:**  Other than rights of Seller's affiliates under this contract, no third parties will have any rights under this contract.

#478669 Posted 12/14

(Retired #468572)

## PERSONAL GUARANTY AGREEMENT

1. In consideration of the giving of credit by the United States Steel Corporation, a Delaware Corporation, its successors and assigns, hereinafter designated as "USS", as and when it may deem proper to Universal Metals LLC of Toledo, Ohio his, her, their, or its heirs, executors, administrators, successors and assigns, hereinafter designated as Principal, or the extension of any time of payment of any existing obligations of Principal to USS, and other valuable consideration, David E. Feniger hereinafter designated Guarantor(s), do(es) hereby unconditionally guarantee to USS, its successors and assigns, punctual payment at maturity of any and all indebtedness, including judgments, which Principal may now or hereafter owe to USS, whatever the nature of and however such indebtedness may be evidenced, and whether or however the same may be secured.

2. Notice of the acceptance of this Guaranty, of giving of credit, or default, and of extension of time of payment, or any of them, and any and all other notices or demands the want of giving or making of which by USS to or upon Guarantor(s) or Principal would otherwise affect, impair, or extinguish the liability of Guarantor(s), or any right or remedy of USS hereunder, are hereby waived. USS may, in connection with any or all of the existing or future indebtedness of Principal to it, at its election, at any time and from time to time in such manner and upon such terms and as often as it may see fit, do, perform, or refrain from doing or performing any or all of the following: change the form of said indebtedness, whether evidenced by bill, book account, note or acceptance; extend said indebtedness or any part thereof; change the time or manner of payment of same or any part thereof; modify, release, diminish, increase, exchange, or substitute the same or any part thereof; foreclose, liquidate, exhaust, sell, dispose of, in whole or in part, the security of lien or liens on property or properties securing said indebtedness or any part thereof; take, file or enforce any lien or any security of any character whatever held by or available to USS; modify the terms of sale made by USS and Principal as to time of delivery, terms of payment, etc.; all without in any manner affecting the liability of the undersigned.

3. In the event of any default by Principal in the payment of Principal's indebtedness to USS,

Guarantor(s) will pay interest on the unpaid indebtedness guaranteed hereby to the extent and in the amount that Principal is or may become obligated to pay, and Guarantor(s) further will pay all reasonable costs and expenses incurred by USS in collecting or endeavoring to collect any or all of said indebtedness from Principal or from Guarantor(s), including, but not confined to, court costs and reasonable attorneys' fees.

4. This Guaranty shall be effective and shall be deemed to be unconditionally delivered to, and accepted by, USS upon the signing hereof. The signature of or on behalf of any signatory party to this Guaranty shall make the liability of such party absolute and unqualified and shall not be conditional upon the signing hereof by any other person, firm or corporation. The giving of any credit, or the extension of any time for payment of existing or future indebtedness of Principal to USS at or after the time of execution of this Guaranty shall be deemed to have been done in reliance on this Guaranty.

5. If this Guaranty is executed by two or more guarantors said guarantors shall be jointly and severally liable for any and all indebtedness or obligations secured hereby. The death, incompetence, insanity, insolvency, or bankruptcy of any of such guarantors, or the appointing of a custodian receiver or trustee in any action, suit or proceeding instituted by or against any of such guarantors, or the revocation by any of such guarantors shall not affect the liability of the remaining guarantors for any indebtedness or extension therefore or thereafter accruing, created or granted.

6. In the event of any default by Principal, USS may institute one or more actions against Guarantor(s), or any one or more of them, as guarantors, cumulatively, concurrently, or consecutively, and invoke any legal or equitable remedies in said actions without being obligated first or at any time to institute suit against Principal or others liable upon or in connection with any indebtedness or obligations guaranteed hereunder or to foreclose or exhaust any lien, or other security, of any character whatever held by or available to USS and without affecting any such lien or security.



7. USS shall have the right to apply any moneys received from the Principal or from Guarantor(s), or any of them, or from any security of any character whatever to the principal amount or interest of any particular indebtedness of Principal which to USS may seem preferable, and any right to direct the application of any such moneys to payment or part payment of any particular account or obligation of Principal, is hereby waived by Guarantor(s).

8. The obligation of the Guarantor(s) shall be payable at the office of USS in Pittsburgh, Pennsylvania, or at any other place subsequently designated in writing by USS. This Guaranty shall be governed by and interpreted under the laws of the Commonwealth of Pennsylvania, excluding Pennsylvania conflict of laws rules. Any dispute, issue or controversy relating to this Guaranty, or the respective rights and obligations of the parties hereunder, of whatever nature of description, shall be adjudicated in state or federal court in Pittsburgh, Pennsylvania, as the party-plaintiff may elect.

9. It is hereby warranted and represented that this Guaranty has not been executed in reliance

upon any statement or representation not contained herein, and that this Guaranty embodies all the understandings between USS and Guarantor(s) as to its subject matter and shall not be modified except with the approval in writing signed by an authorized officer of USS.

10. This Guaranty shall continue until December 31, 2014 or until revoked by Guarantor(s) by notice in writing sent to USS's treasury or credit manager at 600 Grant Street – Rm 1344, Pittsburgh, PA 15219 by registered or certified mail, and such revocation shall not become effective until such notice has been so received or until the date of revocation set forth in the notice whichever is the later, and any such revocation shall not be applicable to any indebtedness already in existence on the effective date of revocation.

11. This Guaranty is not in lieu of any previous guaranty, but is in addition to all previous guarantees, and shall be binding upon the heirs, executors, administrators, successors and assigns of the Guarantor(s).

Given at Toledo, in the State of Ohio, this 31st day of December 31, 2013.


ATTEST:

*Cindy Kutchenriter*                    By: _____    (Guarantor)

                                        Name: David E. Feniger


252912v3

## PERSONAL GUARANTY AGREEMENT

1. In consideration of the giving of credit by the United States Steel Corporation, a Delaware Corporation, its successors and assigns, hereinafter designated as "USS", as and when it may deem proper to Universal Metals, LLC of 805 Chicago St, Toledo, OH, 43611 his, her, their, or its heirs, executors, administrators, successors and assigns, hereinafter designated as Principal, or the extension of any time of payment of any existing obligations of Principal to USS, and other valuable consideration, David E. Feniger, c/o Universal Metals, LLC of 805 Chicago St. Toledo, OH, 43611 hereinafter designated Guarantor(s), do(es) hereby unconditionally guarantee to USS, its successors and assigns, punctual payment at maturity of any and all indebtedness, including judgments, which Principal may now or hereafter owe to USS, whatever the nature of and however such indebtedness may be evidenced, and whether or however the same may be secured.

2. Notice of the acceptance of this Guaranty, of giving of credit, or default, and of extension of time of payment, or any of them, and any and all other notices or demands the want of giving or making of which by USS to or upon Guarantor(s) or Principal would otherwise affect, impair, or extinguish the liability of Guarantor(s), or any right or remedy of USS hereunder, are hereby waived. USS may, in connection with any or all of the existing or future indebtedness of Principal to it, at its election, at any time and from time to time in such manner and upon such terms and as often as it may see fit, do, perform, or refrain from doing or performing any or all of the following: change the form of said indebtedness, whether evidenced by bill, book account, note or acceptance; extend said indebtedness or any part thereof; change the time or manner of payment of same or any part thereof; modify, release, diminish, increase, exchange, or substitute the same or any part thereof; foreclose, liquidate, exhaust, sell, dispose of, in whole or in part, the security of lien or liens on property or properties securing said indebtedness or any part thereof; take, file or enforce any lien or any security of any character whatever held by or available to USS, modify the terms of sale made by USS and Principal as to time of delivery, terms of payment, etc.; all without in any manner affecting the liability of the undersigned.

3. In the event of any default by Principal in the payment of Principal's indebtedness to USS, Guarantor(s) will pay interest on the unpaid indebtedness guaranteed hereby to the extent and in the amount that Principal is or may become obligated to pay, and Guarantor(s) further will pay all reasonable costs and expenses incurred by USS in collecting or endeavoring to collect any or all of said indebtedness from Principal or from Guarantor(s), including, but not confined to, court costs and reasonable attorneys' fees.

4. This Guaranty shall be effective and shall be deemed to be unconditionally delivered to, and accepted by, USS upon the signing hereof. The signature of or on behalf of any signatory party to this Guaranty shall make the liability of such party absolute and unqualified and shall not be conditional upon the signing hereof by any other person, firm or corporation. The giving of any credit, or the extension of any time for payment, of existing or future indebtedness of Principal to USS at or after the time of execution of this Guaranty shall be deemed to have been done in reliance on this Guaranty.

5. If this Guaranty is executed by two or more guarantors said guarantors shall be jointly and severally liable for any and all indebtedness or obligations secured hereby. The death, incompetence, insanity, insolvency, or bankruptcy of any of such guarantors, or the appointing of a custodian receiver or trustee in any action, suit or proceeding instituted by or against any of such guarantors, or the revocation by any of such guarantors shall not affect the liability of the remaining guarantors for any indebtedness or extension therefore or thereafter accruing, created or granted.

6. In the event of any default by Principal, USS may institute one or more actions against Guarantor(s), or any one or more of them, as guarantors, cumulatively, concurrently, or consecutively, and invoke any legal or equitable remedies in said actions without being obligated first or at any time to institute suit against Principal or others liable upon or in connection with any indebtedness or obligations guaranteed hereunder or to foreclose or exhaust any lien, or other security, of any character whatever held by

EXHIBIT D

or available to USS and without affecting any such lien or security.

7. USS shall have the right to apply any moneys received from the Principal or from Guarantor(s), or any of them, or from any security of any character whatever to the principal amount or interest of any particular indebtedness of Principal which to USS may seem preferable, and any right to direct the application of any such moneys to payment or part payment of any particular account or obligation of Principal, is hereby waived by Guarantor(s).

8. The obligation of the Guarantor(s) shall be payable at the office of USS in Pittsburgh, Pennsylvania, or at any other place subsequently designated in writing by USS. This Guaranty shall be governed by and interpreted under the laws of the Commonwealth of Pennsylvania, excluding Pennsylvania conflict of laws rules. Any dispute, issue or controversy relating to this Guaranty, or the respective rights and obligations of the parties hereunder, of whatever nature of description, shall be adjudicated in state or federal court in Pittsburgh, Pennsylvania, as the party-plaintiff may elect.

9. It is hereby warranted and represented that this Guaranty has not been executed in reliance upon any statement or representation not contained herein, and that this Guaranty embodies all the understandings between USS and Guarantor(s) as to its subject matter and shall not be modified except with the approval in writing signed by an authorized officer of USS.

10. This Guaranty shall continue until **December 31, 2015** or until revoked by Guarantor(s) by notice in writing sent to USS's treasury or credit manager at **600 Grant St. Rm 1344, Pittsburgh, PA. 15219** by registered or certified mail, and such revocation shall not become effective until such notice has been so received or until the date of revocation set forth in the notice whichever is the later, and any such revocation shall not be applicable to any indebtedness already in existence on the effective date of revocation.

11. This Guaranty is not in lieu of any previous guaranty, but is in addition to all previous guarantees, and shall be binding upon the heirs, executors, administrators, successors and assigns of the Guarantor(s).

Given at 805 Chicago Street, Toledo, Ohio 43611, in the State of Ohio, this 4th day of February, 2015.

ATTEST:

_(signature)_ _____

By: _(signature)_ _____ (Guarantor)

Name: **David E. Feniger; c/o Universal Metals, LLC**
      **805 Chicago St.**
      **Toledo, OH. 43611**

252912v3